UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

QUENTIN STEWART,

               Plaintiff,

v.

PAUL BAILEY, et al.,

               Defendants.

_____/

Case No. 1:22-cv-1018

Honorable Phillip J. Green

## **OPINION**

Plaintiff brings this civil rights action for violation of federal and state law. Plaintiff initiated this action while he was incarcerated at the Berrien County Jail (*see* ECF No. 1, PageID.6); however, during the pendency of this action, Plaintiff was released from incarceration. (ECF No. 4.) Plaintiff has been granted leave to proceed *in forma pauperis* (ECF No. 6), and pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v.*

*Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process."  *Murphy Bros.*, *Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999).  "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant."  *Id.* at 350.  "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend."  *Id.* (citations omitted).  That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights."  *Id.* at 351.  Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal.  *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c).  That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

(1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

<u>**Discussion**</u>

## I.    **Factual Allegations**

Plaintiff's complaint, filed October 31, 2022, arises out of Plaintiff's treatment while incarcerated in the Berrien County Jail in October 2022.  (Compl., ECF No. 1, PageID.2–4.)  Plaintiff sues the following Berrien County Jail staff in their official capacities only: Sheriff Paul Bailey, Corrections Officer Unknown Soper, Nurse Unknown Kelly, Corrections Officer Unknown Warmman, and Corrections Officer Unknown Tarnowski.  (*Id.*, PageID.2.)

Plaintiff first alleges that he had a seizure on October 4, 2022, while in the booking area of the jail.  (*Id.*, PageID.3.)  Plaintiff fell and hit his head.  (*Id.*)  Defendant Warmman and two unknown nurses (not parties) rushed over to Plaintiff and "stood over the top of [him]."  (*Id.*)  Defendant Warmman "acted as a nurse and prop[p]ed [Plaintiff] up and told [him] not to move," while the non-party "nurses barely did anything."  (*Id.*, PageID.4.)  Plaintiff was not placed on observation following this incident "like [he] was supposed to be."  (*Id.*, PageID.3.)  Plaintiff was instead moved upstairs and placed in a "top floor cell," though Plaintiff was "supposed to be on the bottom floor."  (*Id.*)  Plaintiff does not allege that he suffered any harmful effects as a result of the foregoing actions by Defendant Warmman or others.

On October 20, 2022, Defendant Kelly came to Plaintiff's cell while Plaintiff was in school. (*Id.*)  Plaintiff's cellmates informed Defendant Kelly that Plaintiff was in school and would return at 8:30.  (*Id.*)  At 9:00 p.m. lockdown, Plaintiff asked Defendant Soper if he could tell Defendant Kelly that Plaintiff had not received his medications.  (*Id.*)  Defendant Soper said that he would advise the nurse.  (*Id.*)  At 10:00 p.m., Plaintiff again asked Defendant Soper for his medication.  (*Id.*)  Defendant Soper responded that he was about to leave and that the next shift would be arriving. (*Id.*)  At 11:00 p.m., Plaintiff asked Defendant Tarnowski to get the nurse to bring Plaintiff's medication.  (*Id.*)  Defendant Tarnowski indicated that he would advise the nurse.  (*Id.*)  Again during 12:00 a.m. rounds before the lights went off, Plaintiff asked Defendant Tarnowski for his medication.  (*Id.*)  Defendant Tarnowski responded that he would tell the nurse.  (*Id.*)  Finally, when Plaintiff asked Defendant Tarnowski for Plaintiff's medication at 1:00 a.m., informing Defendant Tarnowski that the medication was for Plaintiff's PTSD, nightmares, and depression, Defendant Tarnowski told Plaintiff that Defendant Tarnowski "do[es not] run this floor and Nurse Kelly already wrote [Plaintiff] down as a refusal for [his] meds."  (*Id.*)  Plaintiff states that he did not refuse his medication.  (*Id.*)  Although nursing staff were on duty until 5:30 a.m. the following morning, Plaintiff did not receive his medication for that day.  (*Id.*).  Plaintiff claims that "anything could have happened to [Plaintiff]" as a result of not receiving his medication, but Plaintiff does not indicate that he suffered any ill effects from not receiving his medications on this occasion.  (*Id.*, PageID.4.)

Lastly, Plaintiff states: "Sheriff Bailey is over all these untrained staff and that's why he's accountable." (*Id.*)

Plaintiff seeks $4.1 million for "pain and suffering, malpractice, negligence and neglect for the well[-]being of [Plaintiff's] care." (*Id.*, PageID.5.)

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Liberally construed, the Court finds that Plaintiff brings claims under either the Eighth or Fourteenth Amendment of the United States Constitution for the deprivation of proper medical care, as well as claims for negligence and medical malpractice under Michigan state law.

### A.    Constitutional Claims

Plaintiff claims that Defendants violated Plaintiff's constitutional rights on both October 4, 2022, when Plaintiff was not provided with adequate care following his seizure, and on October 20, 2022, when Plaintiff was not provided with his medications.  Plaintiff indicates that, at the time of the events described in the complaint, Plaintiff was in the custody of the Berrien County Jail; however, Plaintiff does not specify whether he was in custody pre-trial or following a criminal conviction.  Regardless, for the reasons discussed below, the Court will dismiss Plaintiff's constitutional claims against all Defendants.

### 1.    Official Capacity Claims

Plaintiff brings claims against Defendants in their official capacities only. (ECF No. 1, PageID.2.)  Official-capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690, n. 55 (1978)).  Thus, an official-capacity suit is to be treated as a suit against the entity itself.  *Id.* at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); s*ee also Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "Individuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally.  *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Graham*, 473 U.S. at 165–66.  Accordingly, claims against each Defendant employed by Berrien County, (ECF No. 1, PageID.2), are treated as claims against the County itself.

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. at 690–91).  Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question."  *Id.* (citations omitted).  The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy.  *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)).

A plaintiff can show the existence of a policy or custom by alleging facts that show one of the following circumstances: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Lipman*, 974 F.3d at 747 (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).  In this case, Plaintiff does not allege the existence of an illegal official policy.  Nor has Plaintiff alleged an unconstitutional "custom," meaning a practice that is so widespread as to have the force of law.  *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).  Plaintiff instead appears to seek liability on a failure-to-train theory, alleging that "Sheriff Bailey is over all these untrained staff . . ." (ECF No. 1, PageID.4).  Plaintiff's allegations fall far short of pleading a viable *Monell* claim.

> "[M]unicipal liability under § 1983 attaches where—and only where—a *deliberate choice* to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84, 106 S. Ct. 1292, 89 L.Ed.2d 452 (1986) (emphasis added) (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S. Ct. 2427, 85 L.Ed.2d 791 (1985) ("'policy' generally implies a course of action consciously chosen from among various alternatives.")).

*Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012).  Thus, "[t]he inadequacy of police training only serves as a basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *Slusher v. Carson,* 540 F.3d 449, 457 (6th Cir. 2008) (citation omitted).  To establish deliberate indifference in the context of a failure to

train claim, Plaintiff "must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Id*. (internal quotation marks omitted) (citing *Miller v. Calhoun County,* 408 F.3d 803, 816 (6th Cir. 2005)) (concluding that, absent evidence of a "history of similar incidents" or notice, or evidence that the governmental entity's "failure to take meliorative action was deliberate," plaintiff's claim of municipal liability under § 1983 fails).

Even assuming that Defendant Bailey, as Sheriff, is a policymaker for Berrien County, Plaintiff has provided no factual allegations regarding prior instances of unconstitutional conduct, Defendant Bailey's awareness of the same, or the actual training practices within the Berrien County Jail. Plaintiff instead asks the Court to infer that the two isolated incidents of alleged misconduct described in the complaint arose from inadequate training.  The Court cannot do so. The Supreme Court has long held that an inference of inadequate training based solely upon isolated incidents is "unwarranted; first, in its assumption that the act at issue arose from inadequate training, and second, in its further assumption concerning the state of mind of the municipal policymakers." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985).  "More importantly," allowing the inference that Plaintiff seeks to make here, would allow "a § 1983 plaintiff to establish municipal liability without submitting proof of a single action taken by a municipal policymaker." *Id*.

As Plaintiff has alleged no facts to support his conclusory allegation of inadequate training or supervision by Defendant Bailey, Plaintiff cannot maintain "official capacity" claims against Defendants under § 1983. The Court will therefore dismiss Plaintiff's complaint in its entirety. Nonetheless, even if this Court were to address Plaintiff's claims against Defendants individually, as discussed below, Plaintiff fails to state a claim upon which relief can be granted.

### 2. Denial of Medical Care

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)).

> The Eighth and Fourteenth Amendments are violated "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety."

*Id.* (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)). The application of the proper constitutional right depends on the nature of plaintiff's detention: the Eighth Amendment applies to convicted prisoners, while the Fourteenth Amendment applies to pretrial detainees. *Id.* Because Plaintiff does not specify the nature of his custody, the Court will address Plaintiff's claims under both the Eighth and Fourteenth Amendment standards.

### a.   Applicable Standards

### (1)   Eighth Amendment Standard

The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).  Deliberate indifference may be manifested by a medical professional's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."  *Estelle*, 429 U.S. at 104–05.

An Eighth Amendment claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person."  *Blackmore*, 390 F.3d at 899; *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).  If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical

treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The Eighth Amendment's subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).  Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.  To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart*, 894 F.3d at 738 (quoting *Farmer*, 511 U.S. at 842).

### (2)    Fourteenth Amendment Standard

Until recently, the Sixth Circuit applied the Eighth Amendment's prohibition on cruel and unusual punishment to Fourteenth Amendment claims for inadequate medical care, requiring that a plaintiff demonstrate both the objective and subjective elements of deliberate indifference.  *Trozzi v. Lake Cnty.*, 29 F.4th 745, 751–52 (6th Cir. 2022).  However, in *Brawner v. Scott County, Tennessee*, 14 F.4th 585 (6th Cir. 2021), the Sixth Circuit shifted its approach, modifying the subjective element of the

deliberate-indifference test to "something akin to reckless disregard." *Trozzi* 29 F.4th

at 752–53 (quoting *Brawner*, 14 F.4th at 596). Now,

> a plaintiff must satisfy three elements for an inadequate-medical-care
> claim under the Fourteenth Amendment: (1) the plaintiff had an
> objectively serious medical need; (2) a reasonable officer at the scene
> (knowing what the particular jail official knew at the time of the
> incident) would have understood that the detainee's medical needs
> subjected the detainee to an excessive risk of harm; and (3) the prison
> official knew that his failure to respond would pose a serious risk to the
> pretrial detainee and ignored that risk.

*Id.* at 757–58.

### b.    Claims Against Defendant Sheriff Bailey

Plaintiff brings claims against Defendant Bailey solely because "Sheriff Bailey

is over all these untrained staff and that's why he's accountable."  (ECF No. 1,

PageID.4.)    However, government officials may not be held liable for the

unconstitutional conduct of their subordinates under a theory of respondeat superior

or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*,

556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based

upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th

Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's

subordinates are not enough, nor can supervisory liability be based upon the mere

failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*,

368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed

simply because a supervisor denied an administrative grievance or failed to act based

upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300

(6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant,

14

through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts from which the Court could infer that Defendant Bailey encouraged or condoned the conduct of his subordinates, or authorized, approved or knowingly acquiesced in the conduct.  Indeed, he fails to allege *any* facts at all about Defendant Bailey's conduct.

Plaintiff alleges nothing beyond his conclusion that Defendant Bailey's staff were generally "untrained."  (ECF No. 1, PageID.4.)  Such conclusory allegations fall far short of stating an actionable claim under § 1983.  *See Iqbal*, 556 U.S. at 678–79;

*Twombly*, 550 U.S. at 555.  The Court therefore will dismiss Plaintiff's § 1983 claims against Defendant Bailey.

### c.     October 4, 2022, Seizure – Defendant Warmman

Plaintiff brings claims against Defendant Warmman related to Plaintiff's October 4, 2022, seizure.  Plaintiff claims that, at the time of Plaintiff's seizure, Defendant Warmman "acted as a nurse and prop[p]ed [Plaintiff] up and told [him] not to move," while two unnamed nurses stood over Plaintiff and "barely did anything." (*Id.*, PageID.3–4.)  Plaintiff alleges that he was not placed on observation following his seizure, and was not given a bottom floor cell, in violation of proper procedure; however, Plaintiff does not identify the person(s) making those decisions.  While the Court assumes without deciding that Plaintiff's seizure and related medical needs were objectively serious, Plaintiff fails to state a claim against Defendant Warmman.

Whether considering the Eighth Amendment's traditional test for deliberate indifference or the recently clarified Fourteenth Amendment standard, Plaintiff's complaint contains no facts to indicate that a reasonable officer at the scene of Plaintiff's seizure would have acted differently than Defendant Warmman did on October 4, 2022, or that Defendant Warmann knew that some unspecified failure would pose a serious risk to Plaintiff's health or well-being.  Indeed, Plaintiff's complaint describes Defendant Warmman's actions favorably, indicating that, following Plaintiff's seizure, Defendant Warmman propped Plaintiff up and told Plaintiff not to move, "act[ing] as a nurse" for Plaintiff.  (ECF No. 1, PageID.4.)

16

Although Plaintiff goes on to describe that Plaintiff was not placed on observation following his seizure "like [he] was supposed to be," and was improperly moved to a "top floor cell" (*id.*), Plaintiff's complaint is entirely devoid of facts that would link Defendant Warmman to either of those decisions.  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676; *Heyerman*, 680 F.3d at 647 ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior.").  Because Plaintiff fails to plead sufficient facts to demonstrate that Defendant Warmman, through his own actions, violated Plaintiff's constitutional rights, the Court will dismiss Plaintiff's claims against him under § 1983.

### d.    October 20, 2022, Denial of Medication – Defendants Kelly, Soper & Tarnowski

Plaintiff also claims that Defendants Kelly, Soper, and Tarnowski violated Plaintiff's constitutional rights by denying Plaintiff his medications on October 20, 2022.  Again, the Court need not separately analyze Plaintiff's claims under the Eighth and Fourteenth Amendments because Plaintiff fails to plead facts to demonstrate an objectively serious medical need in a single day of missed medication.

To state a claim for constitutionally inadequate of medical care, whether under the Eighth or Fourteenth Amendment, Plaintiff must first demonstrate an objectively serious medical need.  *Farmer*, 511 U.S. at 834; *Trozzi* 29 F.4th at 757–58.  While Plaintiff suffers from multiple underlying medical conditions which may themselves

17

be considered objectively serious, Plaintiff does not claim that he was denied medical treatment generally.  Plaintiff's October 20, 2022, claim is instead based on a single day that Plaintiff did not receive his medications.  In a situation such as this, Plaintiff must plead facts to demonstrate that the alleged deprivation—one day of missed medication—is sufficiently serious.  *See Napier*, 238 F.3d at 742 (holding that allegations of missed treatment require proof of injury caused by the delay in treatment and agreeing that examining the "seriousness of a deprivation by examining the effect of the delay in treatment . . . will often afford the court with the best available evidence on the question of whether 'the alleged deprivation is sufficiently serious' and whether the inmate 'is incarcerated under conditions posing a substantial risk of serious harm'" (citations omitted)); *see also Estelle,* 429 U.S. at 106 ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."); *Hudson*, 503 U.S. at 8 (discussing that in evaluating an Eighth Amendment claim, courts should consider "if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation").  In keeping with this precedent, courts have held that an occasional missed dose of medicine does not rise to the level of a constitutional violation.  *See Stone v. Cheboygan Cnty.*, No. 00-CV-10404-BC, 2002 WL 507504, at *5 (E.D. Mich. Apr. 4, 2002) (concluding that "[a]n occasional missed dose [of medicine], and missed scheduled, non-emergency medical appointments, do not pose a 'substantial risk of serious harm'" sufficient to satisfy the objective component of an Eighth Amendment claim); *see also Zentmeyer v. Kendall Cnty.*, 220

18

F.3d 805, 812 (7th Cir. 2000) (holding that the occasional missed dose of medicine, without more, does not violate the Eighth Amendment); *Mayweather v. Fote*, 958 F.2d 91, 91 (5th Cir. 1992) (concluding that occasionally missed doses of medicine "fall far short" of establishing deliberate indifference); *Herndon v. Whitworth,* 924 F. Supp. 1171 (N.D. Ga. 1995) (discussing that occasional missed doses of medication do not implicate the Constitution).

Here too, although missing a day of medicine is certainly not ideal, Plaintiff does not plead any facts to allow this Court to infer that a single day of missed medication placed Plaintiff at a substantial risk of serious harm.  Plaintiff claims only that "anything could have happened to me from not getting my meds." (ECF No. 1, PageID.4.)  However, Plaintiff does not elaborate on what he believes could have happened and does not allege any actual resulting harm.  Plaintiff has simply not pled sufficient facts to meet the objective prong under either the Eighth or Fourteenth Amendments.  The Court will therefore dismiss Plaintiff's claims premised upon the one day of missed medication on October 20, 2022.

### B.    State Law Claims

In addition to alleging violations of Plaintiff's constitutional rights, Plaintiff asserts that the actions of Defendants constituted "malpractice, negligence and neglect." (ECF No. 1, PageID.5.)  Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.  Accordingly, the Court liberally construes Plaintiff's

references to "malpractice" and "negligence" as an attempt to raise additional claims under Michigan common law.

In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Because Plaintiff's federal claims will be dismissed, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Therefore, Plaintiff's state law claims will be dismissed without prejudice to Plaintiff's ability to bring those claims in the state court.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss Plaintiff's state law claims without prejudice. The Court must next decide whether an appeal of this action would be in good faith within the meaning of

28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).   Although the Court concludes that Plaintiff's federal claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court does not certify that an appeal would not be taken in good faith.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:  January 18, 2023                          /s/ Phillip J. Green
                                                  PHILLIP J. GREEN
                                                  United States Magistrate Judge